Mr. Ricky Sisson 1315 South Main, #4 Hope, AR 71801
Dear Mr. Sisson:
You have requested an official Attorney General opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), concerning the release of certain records under the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 through -109).
You state that a particular captain in the Hope Police Department was suspended with pay for 10 days pending an investigation of an incident that occurred during a time when we was acting as Chief of Police. The public does not know what this incident was. The result of the investigation apparently was a finding that the allegations that led to the investigation were unfounded. The public does not know what those allegations were. The captain has since returned to work.
You state that you presented a request to the Hope Police Department for records relating to this captain's suspension. More specifically, you indicate that you requested "reports, incident reports, offense reports, supplemental reports, memos, internal affairs reports, and all other documents pertaining to the investigation." The Department has declined to provide you with copies of the requested records.
I am directed by law to issue my opinion as to whether the determination of custodian of the records regarding the release of the records is consistent with the FOIA. A.C.A. § 25-19-105(c)(3)(B).
RESPONSE
As an initial matter, I must point out that because I cannot examine the records that you requested, I cannot opine definitively regarding the appropriateness of their release. Nevertheless, I will discuss the legal principles that will govern this type of situation.
Your listing of the records that you requested appears to indicate that all of the records you asked for were records that would have been created in connection with the investigation of the employee in question. I have consistently taken the position that records generated as part of an investigation of allegations of the misconduct of an employee, and that detail incidents that gave rise to an allegation of misconduct, should be deemed the "employee evaluation/job performance records" of that employee, and their releasability should be analyzed under the standard for the release of such records. See Ops. Att'y Gen. Nos. 2001-101; 2000-231; 2000-203; 2000-130; 1999-361; 1999-359.
Under the FOIA, "employee evaluation/job performance records" are releasable only if the following three conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
It is unclear from the facts that are available to me whether the above-listed conditions have been met. You have not indicated whether the captain's suspension was officially reversed by the department as a result of the finding that the allegations against him were unfounded. Police departments handle situations of this nature differently. Some departments do officially reverse a suspension that was imposed on the basis of allegations that later prove to be groundless. The question of whether the department in Hope handled the matter in this way is crucial, because if the suspension was officially reversed, condition (1), above, has not been met. In such a situation, the matter is treated as if there was no suspension. Ops. Att'y Gen. Nos. 2000-242; 97-176.Accord, Watkins, The Arkansas Freedom of Information Act (m m Press, 3rd Ed., 1998) at 144. If the suspension was not reversed, however, and the captain was simply allowed to return to work, the other two conditions must be considered. It seems likely that because the records you requested all related to the suspension, condition (2) was probably met in this situation (although I acknowledge that I do not know all the facts of the situation, and they could indicate otherwise). Typically, condition (3) is the most difficult to overcome. The determination of whether there is a compelling public interest in particular records must be made, in the first instance, by the custodian of the records. As previously noted, because I cannot review the records, I cannot opine as to whether such a determination that may have been made by the custodian of these records was correct. Moreover, the language of the FOIA itself provides little guidance, because it does not define the phrase "compelling public interest." Indeed, the question of whether the public has a compelling interest in particular records is a question of fact that must be answered on a case-by-case basis in light of all the relevant factors about the situation in question.
Professor John Watkins, a commentator on the FOIA (cited previously), has provided some guidelines for determining whether a compelling public interest exists. He states: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Watkins, supra at 146. Professor Watkins also points out: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Watkins, supra at 145-46. In this regard, Professor Watkins also states: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Watkins, supra
at 147. Professor Watkins has also noted that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Watkins, supra at 146-47 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
I acknowledge that while the foregoing guidelines may be helpful to custodians of records who are assessing the releasability of records, they are of little help to third parties like you who have requested records, who have been denied access to the records, and who are attempting to assess the custodian's determination without knowing the contents of the records. In this regard, I note that if you have been aggrieved by the custodian's denial of access to the records, the FOIA grants you a private right of action in the circuit court. See A.C.A. §25-19-107.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General